and bring them in. The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States in this honorable court. Good morning, gentlemen. And the first case this morning is GEFT Outdoors and Jeffrey Lee versus the City of Westfield. Mr. Saverin, you lead off. Thank you, Your Honor. I'm Philip Saverin. I represent the City of Westfield, which is the appellant in the in the case. The question in this case is whether governments can restrict poll signs and off-premises signs in the interest of aesthetics and safety. We maintain that the district court correctly ruled that the poll sign restriction was subject to intermediate scrutiny but that it misapplied the test. I think there's no question that the poll sign is not content-based in any respect. It is defined as a sign that is supported by one or more polls, posts, or braces upon the ground in excess of six feet and that is not attached or supported by any building. I think there's also no question, and I think it's been settled in the case law, that restricting poll signs, also known as billboards, serves important governmental interests. This much was stated in the case of Luce versus Campbell that we cited in the brief in the context of saying that you don't need to have empirical evidence or studies to know that poll signs can be aesthetic disasters, is what the court actually said, citing back to the metro media decision from the Supreme Court. The intermediate scrutiny question asked whether the restriction directly, substantially, and materially advances the government interest. This much is settled as well. We cite to the case of Florida Bar versus Wentford, decided by the Supreme Court, as well as this court's opinion in Cantor versus Barr. These cases stand for the principle that narrow tailoring in the intermediate scrutiny context requires a reasonable fit, but not a perfect fit, and that the fit must be reasonable in proportion to the interest served. The district court found other ones. In other words, found that the intermediate scrutiny test was not reached, but reached it in a way that we think was an improper conceptual analysis or application of the intermediate scrutiny test. Instead of asking whether the poll sign limitation was directly and materially advanced in the governmental interest at stake, the district court looked at exemptions for certain types of flags from the permit requirement and said that the distinctions among flags was content-based in not requiring a permit and therefore it was not a, was not narrowly tailored. We have two main issues with this analysis. The first one is that Geft Outdoors, the plaintiff in this case, does not want to put up a flag. They want to put up a billboard, and the exemptions are among types of flags. We would cite the court to the Lyman Guth versus Downers Grove case, where the company, the plaintiff in that case, wanted to paint or painted a large sign on a wall and claimed that the ordinance was content-based because it had many exemptions that were content-based. Mr. Savrin, can I ask you a question? Because you're recounting a lot of what's in the arguments in the brief, I want to maximize our time here in the courtroom. Absolutely. So the part of the district court decision on the permitting that doesn't really, or that confuses me a little bit, is why under the district court's analysis does that lead to the remedy of the entire permitting provision, root and branch, being permanently enjoined? And my not what you're urging, but assume that we affirm. Is there a permitting requirement of any kind that would be in place in the city of Westfield with respect to any sign? No, your honor. The district court has struck an entire section. Okay, so then go to the first part of the question. Yes. If there's a flag that somehow links back to the pole sign requirement, why does that lead to a remedy of the permitting requirement being essentially excised or stricken? I cannot support that, your honor. I think that that is a problem that we have. It is the strike individual exemptions to the extent that that that's relevant to guess application here or their claims. But we would maintain that this is probably not answering a question directly, but we would maintain that the exemptions themselves are not subject to strict scrutiny. We are conceding, as I but the other exemptions, we don't see any basis for those being struck, let alone the entire permitting process. Yeah, I don't know. Part of it that I don't understand is like if we just assume that, okay, the off-premises ban in the pole, the pole sign limit, let's just assume they're unconstitutional. I know that's not what you want, but for discussion purposes, fine. Well, it would make sense to me, then, that you don't need a permit for an off-premises sign because the off-premises sign provision has been declared unconstitutional. But I don't know how that leads to, as a remedial matter, a conclusion that any and all permits for any and all forms of signs in the city of Westfield, signs that have nothing to do with off-premises and poles, that the permitting provision is unconstitutional, root and branch. That part of it is the one that I have a hard time following. Judge, I think it also has a practical problem, which is that it forces there to be a post-speech remedy. In other words, there are many signs that comply with the ordinance. There are many signs in Westfield. So if there's no permitting requirement, assume we affirm again, there's no permitting requirement, and we affirm tomorrow. What I'm trying to think about, I'm asking a very practical question, if we affirm tomorrow, Wednesday, can GEFT begin putting up its billboard on Thursday? Well, there's still an injunction because of other problems with the sign. So there still is an injunction in place. Was the size issues and stuff like that? They don't have a variance? So they, okay, all right. The size, the digitized, the changing displays, things of that sort. But the practical problem is that someone now, without the permitting process, someone cannot get approved for a sign, so they go to the expense and trouble putting up a sign, and then it has to be permitted. So if GEFT on Thursday said, we're dropping the digitized and we're going with a conforming size, could they start construction on Thursday? Yes, but they would not need a permit if everything else met within the... They wouldn't need a permit because the permit's no longer required. Exactly. Okay, thank you. Okay, I see I've gone over my 12 minutes. I would like to save some time for rebuttal, and I think that Judge Skoda, you're right, the arguments are in the briefs, and I haven't gotten to the point where I think we've made them in the briefs, and I might address them on rebuttal. Thank you, Mr. Stevens. Mr. Brelach? Thank you. May it please the Court, Rich Blake-Locke on behalf of GEFT Outdoor. I intend to focus my argument on three points. First, the Court need not get to the off-premises constitutional issues because Westfield has granted its favored governmental speaker, the high school, a monopoly to speak on digital billboards while refusing to permit GEFT to do likewise, which to my knowledge makes this case unlike any of the other billboard cases working their way through the courts. Second, the District Court's severance analysis is erroneous. The District Court should have stricken the entire sign ordinance as well as the related permit provision and variance provision. Third, the issue of the constitutionality of Westfield's variance provisions was properly before the District Court, and the District Court erred in refusing to grant an injunction against its application, and then obviously I'll address some of the points made by Westfield's counsel. When GEFT started to erect its digital billboard on US 31 in Westfield in late 2017, Westfield's UDO had a ban against off-premises signs. Prior to that time and through today, there are two digital billboards facing US 31 on the outside of Westfield's high school stadium that engage in exactly the type of speech GEFT seeks to engage in, commercial off-premises speech and non-commercial speech. When GEFT filed its lawsuit in 2017, the city of Westfield had not even granted the high school a permit for the two signs, despite what it now says are its aesthetic and traffic safety concerns about those types of signs. They let those digital signs exist for years without, to my knowledge, granting a permit and not granting any citations. Those signs did not and still do not comply with Indiana Department of Transportation's guide on digital billboard operation, and I will note, Judge Scudder, that you asked a question about is there any type of a permit? The answer is yes. We have an NDOT permit. The law in Indiana is we have an NDOT permit to erect this billboard with subject to NDOT's regulations. The law in Indiana is entitled to impose more restrictive provisions. Well, our argument here is that those restrictive provisions are unconstitutional, and hence, we just erect the billboard and it's going to be licensed by NDOT, not by NDOT and Westfield. No, I understand that, but do you disagree with what Mr. Saverin said about, you know, my whole hypothetical about Tuesday, Wednesday, Thursday, all that stuff? If we affirm here the permitting provision has been permanently enjoined, so there'd be a Seventh Circuit opinion affirming that. Forget certiorari review and all that for a second. Okay, if you have your NDOT permit, couldn't you begin construction on Thursday if you were if you were going to build within the, you change the size and all that stuff? Well, the answer is yes, and I would also say that I think we could build it despite the size because there is no permit in Westfield. I can't go anywhere and say, hey, give me a permit to allow a larger sign. There is nothing there that regulates signs because I don't have a, I don't have to get a permit. Yeah, I know you. What I can do. Yeah, go ahead. What I could ordinarily do is go get a variance, which is what we tried to do, and the variance was denied, and we argued to the court that the variance provisions are unconstitutional. They're too vague, they're too subjective. The members of the BZA testified, yes, based on subjective beliefs. One of them said something slightly different, which is subjective and objective. So our proposition is this, Judge, our remedy is to erect this billboard either for one of two reasons. One, as it currently stands, we don't have to get a permit. Nobody does. Westfield acknowledges that, and it's brief. Secondly, the variance, which would give us redress for the size and the other things, that is unconstitutional, prior restraint. And so, yes, we do believe tomorrow, if you, well, there's the issue of the injunction still there, but if you dissolve the injunction, we could erect the billboard that we want to erect. But everyone agrees right now, right, as we're here, that I know what your argument is, but we all agree, just as a matter of fact, that the district court has not adjudicated the merits of the variance issue. That's correct. Yeah. Okay. And just as a descriptive matter, do you know why not? No, I don't. Well, you were part of the litigation, though, right? I mean, I'm not pressing you on that. I'm just trying to understand. How do we get to this particular point? The variance is a big deal here. Agree. And so when she entered her opinion, did you guys say, Hold on, there's a big part of this that's missing. We we need this variance issue adjudicated. We did exactly that, Judge. We pointed to the parts of the court's order that discussed where we argue. I mean, they sort of recite everybody's arguments and say, Gept argues that the variance is an unconstitutional prior restraint as a subjective. We filed a motion afterwards, and the court said, Well, you didn't move for summary judgment on count eight, which is our state law remedy under the zoning rules. And we said, Well, that's not that wasn't the purpose of rule of count eight. That was sort of a state remedy, which is why we didn't do it. Count three, which talks about it being unconstitutional under section 1983. That's where we asked for this. We very specifically put in our motion for summary judgment. Three things 61.17 or 71 unconstitutional in total 10.10 unconstitutional in total and 10.14 unconstitutional in total. The court just ruled on on the one and did not on the others, and I honestly cannot tell you why not other than what we believe was mistaken reliance on count eight, which was our state law remedy. So the other sort of going back to this Westfield monopoly in 2019 Westfield approved a planned unit development that now allows the high school to advertise these off premises messages, but not get which is noteworthy because glad to be before this panel again because we were excoriated by Westfield for trying to put up a billboard without a permit back in 2017. But that's exactly what they allowed the high school to do prior to 2017 and didn't do anything about it until 2019. So what it did is get granted Westfield the ability to do all the things that we want to our variants with one exception, and that's the size and then obviously the pole band, which is unconstitutional. So this notion of aesthetics is it's really red herring as the district court correctly noted. So the result is that in 29 as of 2019 in Westfield, if the speaker wants to disseminate a commercial or non commercial message on an electric truly billboard facing US 31, they got to go to the government. The high school to do so, and that government entity can pick and choose which messages the speaker can show. Currently in Westfield, there's a lot of drama about the amount of money being spent on Grand Park and investigations and so forth. Suppose the citizen wanted to put up a sign against the city of Westfield's position on its busiest road US 31. If the high school, a sister government entity to the city of Westfield denies them that right, the speaker has nowhere else in Westfield to speak in a way the government has stifled through its monopoly on signs, the ability to post the other side of the debate, which is plainly problematic under Citizens United versus Federal Election Commission, in which the court said the First Amendment protection is premised on mistrust of government power and stands against attempts to disfavor certain subjects or viewpoints. Restrictions allowing speech by some but not others is prohibited by the First Amendment, but that's exactly what's happened here. Mr. Blake, can you can you can I get the benefit of you translating something from your perspective? Yes, because I'm going to ask Mr. Sabrin for this. He didn't get to it. I don't understand the legal consequence of saying that the high school is doing what it's doing because it was allowed a planned unit development or it's part of a planned unit development. That seems to me to be a reference to some kind of municipal regulation or municipal. OK, all right, fine. But what what first some First Amendment significance is there to the fact that Westfield High School is part of a planned unit development? Specific to it being part of a planned unit development, I would argue none. It's you've got different ways of authorizing certain uses in Westfield. One of which is to get a variance, which is what we saw. Another, which is to get a PUD, which sort of encircles a geographic area and say, hey, we're going to have some specific rules apply to this geographic area. Either way, it's the Westfield city government approving special rules either. In our case, it would have been a variance of theirs. It was a PUD. So from what I would say is from a First Amendment standpoint, I don't think it has any significance.  So what I thought your tell me if I've misunderstood what I what I interpret your argument to be is not so much about PUD this or zoning that, but rather that there's discrimination occurring. On the way that this whole entire scheme, all of its chapters, PUD included, are a way that favors the high school for whatever reason, and a way that disfavors others, including your client. So it seems to me that your point is not and tell me if I'm mistaken or I've misunderstood it. It's not so much about looking at this in the codebook and saying it's problematic in the codebook. Your point is that the way that they've applied this is they're picking and it's not allowed here. That's exactly right. It doesn't matter. I mean, flip it, reverse it around. Had we have asked for a PUD and been denied a PUD and went in the high school and asked for a variance and been granted a variance, the results the same through whatever mechanism the city of Westfield has said, it's OK for you, sister government entity, to speak and speak in a way that we say is athletic, aesthetically unpleasing and dangerous to traffic, which, by the way, doesn't even comply with in-dots regulations. I mean, it's amazing. So we're going to let you speak. Somebody else can't do it a few miles down the road. That is. I mean, we don't even have to get to read. We don't have to get to all the other things that we've been talking about. That is so fundamentally problematic under the First Amendment, as recognized by the Citizens United case. So on that basis alone, we think the court should conclude that Westfield has violated Guest's First Amendment rights. On the issue of the pole sign and line, Bruce, I'm not sure if I'm pronouncing that right. I've struggled with that. That case is the line. Bruce case is factually distinguishable. First of all, it only involves commercial speech for the ad for the company on the wall. Our case involves commercial and non-commercial speech. And I think it's very important to note here. We have a rotating digital billboard and whether we even if it's static, our client has a consistent history of putting almost 40 percent signs that are non-commercial, unlike in the line group case, which was 100 percent commercial. And so for that reason, even if we talk about Metro Media, Metro Media was commercial speech. We have a mix. And when you have a mix, especially something that's just not more than or more than incidental, you have to go to the more protective route, which is saying treat it like non-commercial speech and you end up in strict scrutiny. So that that's one reason. In line group, there are also the court said, well, you didn't rely on any of the exemptions. We did. Little mentioned is the fact that we put up a 10 foot by 10 foot, no trespassing sign, contrary to one of the exemptions that would have limited that to four feet. Of course, the city didn't care because they only care about billboards. But the fact is, we do have and it's in the record a no trespassing sign up there. The plaintiff in Ligonbrook did not include a request for a variance and challenged the variance provisions like we did. And then another important distinction is this. If you take Ligonbrook case and you say, well, OK, there's a prohibition on painted signs above a certain size fine. What we have here would be is if the village of Downers Grove then said, well, you can't do that line, Bruce, storage and moving, but we could put that on the library. They could have a huge painted advertisement on the side of the side of the library. That's what we have here. Fundamentally different than line groups. And in Ligonbrook, sort of it goes to this issue of standing and in the international outdoor versus city of Troy case that we cited, one of the arguments were, well, you don't have standing because you can't get the height or size, much like Westfield's arguing here. And here's what the court there said. And it's at I think it's a page 702. The size and height restrictions of the ordinance cannot be used to deny international outdoor versus city of Troy. And the court said, well, you can't have international outdoor standing on its content based restrictions claims due to the lack of redress ability because the variance provision would allow international outdoor to obtain that redress. The variance provision in the same court said the variance and the permit provision are inextricably linked. And that's absolutely the case. And so what we have here is as we had an international outdoor is vague, subjective international outdoor, but the terms essentially match up. And even Indiana's case said one of those provisions is is is not clear. So that the Ligonbrook case doesn't control all signs. All signed ban, if it was just a pole sign ban would have been fine, much like in Ligonbrook. But that's not what the what the ordinance said. The ordinance says you can have a pole and you can put a flag up and you can put on your flag commercial and non-commercial relating to identifying the entity. And as long as you put a U.S. flag up. So what you have in Westfield and what the court correctly concluded is you have a pole that would some speakers can speak on. That is somebody who's a commercial or non-commercial entity on that premises. But others cannot. Like, yes. That is fundamentally content based restriction subjecting the pole ban exclusion to strict scrutiny, which we would respectfully suggest the court should have done instead of intermediate scrutiny. Instead, it used the fact that Westfield has an enormous pole sign down the road. As it's ironic, when you enter Westfield, it says, welcome to Westfield in this enormous pole sign. And yet they say the aesthetics are problematic. The court said it's under inclusive the pole sign ban because it allows, you know, flags and also the aesthetic argument doesn't hold water. The other issue there is if, as Westfield urges, the court would strike down just the flag exemption. What does that leave you? It leaves you with less speech. The Solantic case and the rapid case all tell us that when you look at severance analysis in a First Amendment context, it's a different animal. You know, we're not looking at a variant scheme and saying, well, gosh, the you know, we think it's unfair and subjective and because you can't put up a particular type of citing, for example, we're talking about First Amendment rights. The court said if you strike something down in the context of First Amendment and then result in less speech, that's anathema to First Amendment considerations. And those First Amendment considerations here should overlay the the issue of severance and the court, we respectfully suggest, did not properly do so. The last thing I want to touch base on is the variant scheme. I ask you a question on that point, Mr. Blaylock, just to get the benefit of your reaction. So the part of the severance analysis that I have a hard time with is if the if the permitting provision is gone, categorically gone, it's wiped out. When I read 6.17 in its entirety, the permitting, the permitting aspect of 6.17 is important, and that makes intuitive sense to me that a municipality would want to issue permits to know what signs are going up around town that way. When six when the permitting provision falls. It seems to me that there's a good argument that 6.17 in its entirety is gone. Because that that is the cornerstone of it. I agree, and I wholeheartedly agree. And the same thing with 1010, which if you look at 1010, it lists all the things that you're going to submit on a permit. That law stands now in Westfield. It has absolutely no utility because there's no permits you have to apply for. Same thing with the variance procedure. And I would I would add your question previously about why. And this was to counsel for Westfield. Why is the entire permit stricken? My view is you can't issue a single permit in Westfield right now, or at least prior to the judge's work. It doesn't require you to consider content. There isn't one. You have to consider content when you issue a permit. And as such, the entire permit provision should go. That's the problem. Now, this case has been pending for four years. Westfield got the ruling last year. Actually, it was right about this time last year, and it's amended it once in reaction to guests' claims and positions here. It could have amended it by now to try to make it legitimate, but it hasn't. So, you know, it comes in here and says, woe is me. We have to issue you know, we have to issue and allow these billboards. But they have done nothing to mitigate against what is an unconstitutional ordinance over the last year, as they did prior to in April of 2018 after we filed a lawsuit. Very briefly, I want to mention Barr, which is a case that is not mentioned, I don't believe, in any of these cases, but it applies the strict scrutiny test to what is at least not political speech. It's unclear if they say it's. So your time is about expired. I'll give you another minute. Oh, thank you, Judge. I was just going to say that Barr didn't say it was expressly commercial speech, but it was a would have been commercial speech under that definition. And it applied what Westfield calls the need to read test and said it wasn't even a close call. And so I don't want to rehash all the other First Amendment cases because they've been beaten to death in the briefing and all the opinions. But I do think Barr is worth noting as additional support for our position. Thank you very much. Thank you. Mr. Samer, I'll give you another minute as well. I appreciate that. My screen did freeze when Mr. Blakelock was saying why strict scrutiny should apply to the whole sign. So I will address that. But it was for about from a five minute mark to about a four minute mark. I had to reboot to see. So I appreciate the additional minute. I find it interesting that Mr. Blakelock highlights things that are not in the district court's order in order to support the district court's decision. For one thing, the Westfield sign, the Westfield, what I call a welcome sign, is not in the city of Westfield, outside the city of Westfield. Yeah, Mr. Samer, what's going on with the high school? Focus on the high school. And I don't I don't understand why this PUD designator, this PUNI acronym is a first significant First Amendment significance at all. Well, it really isn't. It's really a red herring. The high school signs, first of all, are not billboards. They are not poll signs. At best, they are off premises signs. The district court did not reach the high school signs because the district court found that the off premises signs distinction was subject to strict scrutiny and struck it on that basis. So it was not developed in the district court's decision. But so they're not a poll sign because it's attached to the press box or attached to some wall or something. Yes, it's on a building. There's much smaller than these signs of sponsorship rights. Is it an off premises sign within the meaning of the ordinance? Yes, it would be. OK, and so and so what's the how do you respond to your adversary's argument that what the city is doing is it's picking and choosing? It's discriminating. Well, the significance is that because the planned unit development and they can contest whether or not it should have been granted, but because it's a planned unit development, it is not subject to the ordinance. Now, so there's a that doesn't make any sense to me with all respect. So the reason that doesn't because you're you're basically saying the First Amendment and the discrimination claim for First Amendment purposes turns upon municipal ordinances and whether something is in Westfield's case, a planned unit development. But say forget it. Who cares what it is? The fact of the matter is that the high school is engaged in, you know, it has an off premises sign and gaffed is not allowed to do the same thing. Who cares what it's called as a matter of zoning local zoning law? Well, your honor, there are reasons why I mean, not all properties are the same and there are reasons why certain areas might be deemed to be a planned unit. Right. So for purposes of municipal law, I understand that. Why is it not a First Amendment problem on discrimination grounds? Because there are differences between different properties. It's also government property. And as Mr. as as Jeff has pointed out in their brief several times, they've tried to distinguish our cases saying, well, these were government properties which are subject to different levels of scrutiny or different different principles. What I can say, your honor, is that this was not developed in the record, that the high school signs was not something that was developed in terms of the application of the levels of scrutiny. It was not reached by by the district court. We would say, your honor, that if the concern is that the high school signs presented a problem with the off premises limitation, of course, nothing with a pole sign limitation, then perhaps it should be remanded to the district court to consider that in the intermediate scrutiny analysis. Of course, it's not reached if the court agrees that strict scrutiny applies. I don't understand why it wasn't reached and litigated, because it's described in detail on page seven of the district court opinion. The district court did not analyze it in terms of applying the scrutiny analysis because the district court did not meet the intermediate scrutiny analysis. Had the court done so, then we would be in a position to say whether or not the court had accurately applied the intermediate scrutiny test with respect to the high school signs. That's my point, that if that's something that the court is concerned about, if the court determines that intermediate scrutiny applies to the off premises limitation, then that is something that perhaps the district court should look at in terms of applying the intermediate scrutiny test, as opposed to this court trying to delve through the record and figure out. Would it be OK if the city of Westfield went out and identified GEF's largest competitor? I don't know who they are, but whoever they are, and said, we invite you to put up a pole sign and an off premises sign at our football field. And you can engage in off premises advertising. And the reason that we're we can do that and we're confident we can do it is because it's government property and it's one it's part of this PUD. Is that is there a problem if Westfield were to do that? Without more, I really mean, what more do you need? What more do you need? I would what I would need to know is whether the planned unit development meets the conditions for being a planned unit. Assume it does. Assume whatever. Assume whatever you need to assume. I would say this, your honor. I would say that the city could not say that guess competitor could. But Jeff couldn't at that location. OK. And so what? OK, fine. So what distinguishes then the high school from Jeff's competitor? It's not just semantics, your honor, but it's not subject to the same ordinance. It is gone through a process by which it has been determined to be a planned unit. Yeah. See, the thing that's not I understand is you just keep resorting to municipal law. I'm trying to talk about the First Amendment. And you say, well, I want to talk about. PUDs and this or that provision of the Westfield Code, and I'm trying to have a First Amendment discussion. If there if there are not distinctions between the properties, then then I would agree with you that you could not allow one company to and not another. If that's the question. Yeah, go ahead. OK, a couple of other things I'd like to point out in the minutes that remain with respect to the permit requirement and the entirety of six point seventeen, the absence of a permit does not mean that the other standards don't apply. I mean, six seventeen has other things such as signs mounted on a roof or they extend above an E or parapet of a building facade, signs affixed to trees, fence posts, utility poles or other support structures. These are standards that still apply. It's just that now you do not need a permit in order to comply with the standards and you find out afterwards. So it's not just a question of the city finding out where signs are the permanent process. It's also to make sure that before someone goes to the expense of putting up a sign, that they have confirmation that it complies with the building code or the sign code is the same as if you want to put an addition on your house or do some plumbing or that sort. There are certain considerations that need to be taken into place. It's just that without the permit requirement, you just read the ordinance and see what's allowed and you comply with it. And if you don't, then you've got to deal with the stop work orders and things of that sort. Exactly what Jeff tried to do in this case or did in this case, which was go ahead and direct and start to erect its billboard just as if there was no permit requirement at all. The variance issue, quite clearly, I believe, if nothing else is clear in this case, perhaps it's the only thing that's clear is that the district court did not reach the variance question. In fact, there is a motion pending that gets filed asking the district court to do just that. It's a motion for certain relief, I believe it's called, and it's still pending. And in that, it's basically a motion for reconsideration, in part asking the district court to reach the variance question. So we would say we put this in the briefs that the court does not have appellate jurisdiction over that. I would cite to the assignment of properties case in particular, saying that a delay in a decision is not appealable. Jeff wants to bypass the other avenues available. Rule fifty four B, if it applied certification of an interlocutory appeal, perhaps mandamus if it thought that it needed. Those are things that would be the ordinary way that this would reach the appellate court. What I mean, get to said in their briefs that this court did not rule on it and that had not presented. This court was erroneous and saying it had not been presented. If that's accurate, that does not create appellate jurisdiction to rule on whether or not. A ruling on the variance, whatever it might be, should be affirmed or not, the last thing I'd like to say, and again, like I said, I lost the I had to reboot for just under a minute, but I missed the key argument about why the poll site is subject to scrutiny. And let me just say, well, if it's the same thing than in the briefs, flag is not a billboard. The under inclusive analysis, this report essentially applied was misapplied because the under inclusiveness, as the Supreme Court has made clear in the Williams Uly versus Florida Bar case, there's no freestanding limitation. It's it's different from what from narrow tailoring. Narrow tailoring is whether or not it's a reasonable fit in proportion to the interests that are served. Under inclusiveness has to be wildly under inclusive so that even though it serves the interests that are legitimate government interests and is a fit. That it's wildly under inclusive, which questions the veracity of the government's by the Supreme Court, where it was clearly targeted to a certain religious practice. And even though that was a religious case, it's still the First Amendment and discussed the under inclusiveness context. And so, for example, just very briefly, in that case, they wanted to ban this manner of disposing of animal carcasses while allowing it elsewhere. That is very different from saying that this is not a reasonable fit in proportion to the interest because a flag can be furled and unfurled. A billboard is a permanent structure. It's distracting, requires maintenance. It especially if it's flashing, it's intended to call attention of people passing on busy roads as opposed to a flag. I see I'm now out of time. I would rely on our briefs for the remaining questions for the remaining points. Thanks to counsel and the case will be taken under advisement.